# Exhibit A

**Certification**

**STATE OF NEW YORK, COUNTY OF QUEENS, SS:**

I, Audrey I. Pheffer, County Clerk and Clerk of Supreme Court Queens County,

do hereby certify that on April 22, 2019 I have compared

the document attached hereto,

**14111/2011 SUMMONS WITH NOTICE & VERIFIED COMPLAINT filed 6/13/2011 page(s) 1-53.**

with the originals filed in my office and the same is a correct transcript

therefrom and of the whole of such original in witness

whereto I have affixed my signature and seal.

AUDREY I. PHEFFER
QUEENS COUNTY CLERK

STATE OF NEW YORK
SUPREME COURT          COUNTY OF QUEENS

---

**FCDB FF1 2008-1 TRUST,**

Plaintiff,

vs.

**FRANCES RAMOS;**
**THE COMMISSIONER OF SOCIAL SERVICES OF THE**
**CITY OF NEW YORK;**
**NEW YORK CITY ENVIRONMENTAL CONTROL**
**BOARD;**
**NEW YORK CITY PARKING VIOLATIONS BUREAU;**
**NEW YORK CITY TRANSIT ADJUDICATION**
**BUREAU;**
and **"JOHN DOE"** and **"MARY DOE,"**
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

Defendants.

Filed: _____

Index No.: __14111/11__

SUMMONS AND NOTICE

Mortgaged Premises:
101-22 132nd Street
South Richmond Hills, (City of New
York ) NY  11419

---

**TO THE ABOVE NAMED DEFENDANTS:**

   **YOU ARE HEREBY SUMMONED** to answer the Complaint in the above entitled

action and to serve a copy of your Answer on the plaintiff's attorney within twenty (20) days

after the service of this Summons, exclusive of the day of service, or within thirty (30) days after

completion of service where service is made in any other manner than by personal delivery

within the State.  The United States of America, if designated as a defendant in this action, may

answer or appear within sixty (60) days of service hereof.  In case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the Complaint.

**NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT**

   **THE OBJECT** of the above captioned action is for the foreclosure of:

Mortgage bearing the date of June 15, 2007, executed by Frances Ramos  to Mortgage
Electronic Registration Systems, Inc., as nominee for First Franklin Financial Corp., an
Op. Sub. of MLB&T Co., FSB to secure the sum of $392,800.00, and interest, and

recorded in the Office of the Clerk of Queens County on July 17, 2007 in CRFN: 2007000367600 .

That Mortgage Electronic Registration Systems, Inc., as nominee for First Franklin Financial Corp., an Op. Sub. of MLB&T Co., FSB duly assigned said Note and Mortgage to First Franklin Financial Corporation by Assignment dated November 1, 2007 and recorded on April 11, 2008 in the Office of the Clerk of Queens County in CRFN: 2008000146551.

That First Franklin Financial Corporation duly assigned said Note and Mortgage to HIH No. 1, LLC  by Assignment dated November 14, 2008 and recorded on November 25, 2008 in the Office of the Clerk of Queens County in CRFN:  2008000454456 .

That HIH No. 1 LLC  duly assigned said Note and Mortgage to FCDB FF1 2008-1 Trust by Assignment dated December 2, 2010 and recorded on January 28, 2011 in the Office of the Clerk of Queens County in CRFN:  2011000033827 .

The relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the Mortgage described above.

Plaintiff designates Queens County as the place of trial.  The basis of venue is the County in which the mortgaged premises is situated.

Section:
Block:    9499
Lot:        14

DATED:   June 6, 2011
         Rochester, New York

## NOTICE
## YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of
the answer on the attorney for the mortgage company who filed this
foreclosure proceeding against you and filing the answer with the court, a
default judgment may be entered and you can lose your home.

Speak to an attorney or go to the court where your case is pending for
further information on how to answer the summons and protect your
property.

Sending a payment to your mortgage company will not stop this foreclosure
action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON
THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY)
AND FILING THE ANSWER WITH THE COURT.

BY:

Scott A. Sydelnik, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
Foreclosure Department
28 East Main Street, Suite 1700
Rochester, New York 14614
Tel:  (585) 760-8218


## WE ARE ATTEMPTING TO COLLECT A DEBT.
## ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

STATE OF NEW YORK
SUPREME COURT          COUNTY OF QUEENS

**FCDB FF1 2008-1 TRUST**

                                  Plaintiff,

          vs.

**FRANCES RAMOS;**
**THE COMMISSIONER OF SOCIAL SERVICES OF THE**
**CITY OF NEW YORK;**
**NEW YORK CITY ENVIRONMENTAL CONTROL**
**BOARD;**
**NEW YORK CITY PARKING VIOLATIONS BUREAU;**
**NEW YORK CITY TRANSIT ADJUDICATION BUREAU;**
and **"JOHN DOE"** and **"MARY DOE,"**
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

                                  Defendants.

Filed: _____

Index No.: _____

**VERIFIED COMPLAINT**

          The plaintiff herein, by **Davidson Fink LLP**, its attorneys, complains of the defendants
above named, and for its cause of action, alleges:

          FIRST:  Plaintiff, with an office c/o AMS Servicing, LLC, 3374 Walden Avenue, Depew,
New York 14043, is a corporation authorized to do business in this State or qualifies as a "foreign
bank" pursuant to the relevant statutes and, as such, has standing and capacity to bring this action
in the courts of the State of New York.

          SECOND:   Upon information and belief, that at all times hereinafter mentioned, the
defendant(s) set forth in **Schedule A** reside or have a place of business at the address set forth
therein and are made defendants in this action in the capacities therein alleged and for the
purpose of foreclosing and extinguishing any other right, title or interest said defendants may
have in the subject premises.

          THIRD:   That the United States of America, The People of the State of New York, The
State Tax Commission of the State of New York, the Industrial Commissioner of the State of

New York, and all other agencies or instrumentalities of the Federal, State or local government (however designated), if made parties to this action and if appearing in **Schedule B**, are made parties solely by reason of the facts set forth in said schedule, and for no other reason.

FOURTH:   That heretofore, the defendant, Frances Ramos, for the purpose of securing to plaintiff or its assignor, its successors and assigns, the sum of $392,800.00, duly made a certain bond, note, loan agreement, extension agreement, consolidation agreement, or recasting agreement, as the case may be, wherein and whereby they bound themselves, their heirs, executors, administrators and assigns, and each and every one of them, jointly and severally, in the amount of said sum of money, all as more fully appears together with the terms of repayment of said sum or rights of the plaintiff in said bond, note or other instrument. A copy of said instrument, or an affidavit regarding same, is attached hereto and made a part hereof.

FIFTH:   That as security for the payment of said indebtedness, a mortgage was executed, acknowledged and delivered to the plaintiff or its assignor, whereby the mortgagor or mortgagors therein named, bargained, granted and sold to the mortgagee named therein, its successors and assigns, the premises more particularly described therein (hereinafter called "mortgaged premises"), under certain conditions with rights, duties and privileges between or among them as more fully appears in said mortgage, a copy of which is attached hereto and made a part hereof.

SIXTH:   That the said mortgage was duly recorded (and the mortgage tax due thereon was duly paid) in the proper County Clerk's Office at the place and time which appears thereon.

SEVENTH:   That the defendant(s), so named, have failed and neglected to comply with the terms and provisions of said mortgage, bond/note/loan agreement, and said instrument(s) secured by said mortgage by omitting and failing to pay items of principal and interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges, all as more fully appears in **Schedule C** and accordingly the plaintiff hereby elects to call due the entire amount secured by the mortgage described in paragraph FIFTH hereof. The default has continued beyond the applicable grace period set forth in the mortgage, and by reason thereof, plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

**EIGHTH**:   That **Schedule C** sets forth the principal balance due and the date (and rate) from which interest accrued and all other items and charges arising from said default which are now due.

**NINTH**:   That in order to protect its security, the Plaintiff has paid, if set forth in **Schedule C**, or may be compelled to pay during the pendency of this action local, taxes, assessments, water rates, insurance premiums, inspections and other charges affecting the mortgaged premises, and the plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon), should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises.

**TENTH**:   That each of the above-named defendants has, or claims to have, some interest in, or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of plaintiff's mortgage.

**ELEVENTH**:   That the plaintiff is now the sole, true and lawful owner of the said bond/note/loan agreement and mortgage securing the same and there are no pending proceedings at law or otherwise to collect or enforce said bond/note and mortgage.  Copies of Assignment(s) of Mortgage, if any, are attached hereto and made a part hereof.

**TWELFTH**:   That Schedules, Exhibits and other items attached to this Complaint are expressly incorporated and made a part of the Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein wherever reference has been made to each or any of them.

**THIRTEENTH**:   That by reason of the foregoing, there is now due and owing to the plaintiff upon said bond, note, loan agreement, assumption agreement, extension agreement or consolidation agreement the amount set forth in **Schedule C**.

**FOURTEENTH**:   That if the security for the indebtedness consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the sale of the parcels in a particular order to the extent necessary to satisfy the indebtedness or that if the mortgage so states, the mortgaged premises may be sold in one parcel.

**FIFTEENTH**:   The plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment or performance, after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and

all present and future defaults under the note and mortgage and occurring prior to the discontinuance of this action are fully paid and cured.

**SIXTEENTH**:  Pursuant to the Fair Debt Collection Practices Act, this action may be deemed to be an attempt to collect a debt on behalf of the plaintiff.  Any information obtained as a result of this action will be used for that purpose.

**SEVENTEENTH**:  At the time this proceeding is commenced, the plaintiff is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note.

**EIGHTEENTH**:  If applicable, Plaintiff has complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules and regulations promulgated thereunder, section six-l or six-m of the banking law, section thirteen hundred four of the real property actions and proceedings law, and HAMP Supplemental Directive 10-02.

**NINETEENTH**:  Plaintiff has complied with all of the provisions pursuant to RPAPL §§ 1304 and 1306.

**WHEREFORE**, plaintiff demands judgment:

1.    Adjudging and decreeing the amounts due the plaintiff for principal, interest, costs and reasonable attorney's fees, if provided for in the said bond/note/loan agreement or mortgage; and

2.    That the defendant(s) and all persons claiming by, through or under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to said mortgaged premises;

3.    That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, reasonable attorney's fees, allowances and disbursements, together with any monies advanced and paid, may be decree to be sold according to law;

4.    That out of the monies arising from the sale thereof, the plaintiff may be paid the amounts due on said bond/note/loan agreement and mortgage and any sum which may have been paid by the plaintiff to protect the lien of plaintiff's mortgage as herein set forth, with interest

upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, additional allowance, if any, and reasonable attorney's fees, if provided for in said bond, note, loan agreement or mortgage, so far as the amount of such money properly applicable thereto will pay the same;

5.    The premises are being sold subject to:

(a)  All common charges, if any, which are at the time a lien on the premises, together with such interest or penalties as may have lawfully accrued thereon to the date of payment;

(b)  Covenants, restrictions and easements of record and zoning regulations and ordinances of the City, Town and Village in which said premises lie;

(c)  Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley or highway;

(d)  Any state of facts that an accurate survey, currently dated, might disclose;

(e)  Any state of facts an inspection would disclose, it being understood that the property is sold in an "as is" and "where is" condition;

(f)  Any and all tenancies, possessory interests and/or leases affecting said premises which are not extinguished by this foreclosure action;

(g)  The right of redemption of the United States of America, if any;

6.    That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s) referred to in paragraph FOURTH of this Complaint for any deficiency which may remain after applying all of such moneys so applicable thereto, **except that this shall not apply to any defendant who has been discharged in bankruptcy from the subject debt;**

7.    That either or any of the parties to this action may become a purchaser upon such sale;

8.    That this Court, if requested, forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties;

9.    That the plaintiff may have such other or further relief, or both, as may be just and equitable.

Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the mortgage being foreclosed herein;

DATED:    June 6, 2011
          Rochester, New York

BY: _____
    Scott A. Sydelnik, Esq.
    DAVIDSON FINK LLP
    Attorneys for Plaintiff
    Foreclosure Department
    28 East Main Street, Suite 1700
    Rochester, New York 14614
    Tel: (585) 760-8218

## VERIFICATION
(Complaint)

I affirm under penalty of perjury: That I am the attorney for Plaintiff, having an office at 28 East Main Street, Suite 1700, Rochester, New York, 14614, in the within action; that I have read the foregoing Summons and Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believe them to be true.  That the grounds of my belief as to all matters in the Complaint not stated to be upon knowledge are based upon the original bond/note/loan agreement, mortgage and/or financial statements, together with correspondence. I further state that the reason this verification is made by Affirmant and not an officer of Plaintiff's corporation is that Plaintiff is either a foreign corporation, or its principal place of business is not in the county where I have my office.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

_____
Scott A. Sydelnik, Esq.

STATE OF NEW YORK    )
COUNTY OF MONROE    ) ss:

On June 6, 2011, before me, the undersigned, a Notary Public in and for said state, personally appeared Scott A. Sydelnik, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**ASHLEY J. MILES**
**NOTARY PUBLIC, State of New York**
Registration No. 01MI6221788
Qualified in Monroe County
Commission Expires May 10, 2014

## NOTICE REQUIRED BY THE FAIR DEBT
## COLLECTION PRACTICES ACT
## (THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED

1. THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2. THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3. THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4. IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5. IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6. REQUESTS SHOULD BE ADDRESSED TO DAVIDSON FINK LLP, 28 EAST MAIN STREET, 1700 FIRST FEDERAL PLAZA, ROCHESTER, NEW YORK 14614, (585) 760-8218.

7. THE ABOVE-REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.

## Schedule A-Defendants

Frances Ramos
101-22 132nd Street
South Richmond Hills, NY 11419

Record owner and original mortgagor of premises being foreclosed herein by virtue of a deed recorded on October 1, 2002 in the Queens County Clerk's Office in Reel: 6592 Page: 1820 and the party liable for payment of the note and mortgage herein.

"JOHN DOE" and "MARY DOE"
101-22 132nd Street
South Richmond Hills, NY 11419

Said names being fictitious, it being the intention of plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein.

## Schedule B-Defendants

| | |
|---|---|
| The Commissioner of Social Services of the City of New York<br>180 Water Street<br>New York, New York | Holder of a mortgage inferior to that being foreclosed herein which mortgage was recorded November 30, 2009 in the Queens County Clerk's Office in CRFN:2009000390512 given to secure the amount of $200,000.00. |
| CITY OF NEW YORK BY ENVIRONMENTAL CONTROL BOARD<br>66 John Street<br>New York, New York 10038 | Holder of possible judgment and/or liens against Frances Ramos, filed or docketed in the Queens County Clerk's Office which are or may be a lien against the premises. |
| CITY OF NEW YORK BY PARKING VIOLATIONS BUREAU<br>100 Church Street<br>New York, New York 10007 | Holder of possible judgment and/or liens against Frances Ramos, filed or docketed in the Queens County Clerk's Office which are or may be a lien against the premises |
| CITY OF NEW YORK BY TRANSIT ADJUDICATION BUREAU<br>130 Livingston Street<br>Brooklyn, New York 11201 | Holder of possible judgment and/or liens against Frances Ramos, filed or docketed in the Queens County Clerk's Office which are or may be a lien against the premises |

### Schedule C

1. Original Loan Amount ..............................................................$392,800.00

2. Principal Balance Owing .........................................................$379,438.44

3. Default Date ................................................................... August 1, 2010

4. Monthly Payment Amount.........................................................$2,260.00

5. Interest Rate ..................................................................... 5.8812%*

6. Late Charges to Date.................................................................$361.00

*Interest will continue to accrue at the contract bond/note/loan agreement rate, until a Judgment of Foreclosure and Sale has been entered in the proper County Clerk's Office, at which time the interest rate will be calculated at the legal rate of 9.00%.

# NOTE

| June 15, 2007 | Long Beach | New York |
|---|---|---|
| [Date] | [City] | [State] |

101-22 132ND ST
SOUTH RICHMOND HILL, NY 11419
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 392,800.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    9.7500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on    August 01, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    July 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA 15212

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,216.55.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**THE PREPAYMENT NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**
**AMENDS THE PREPAYMENT PROVISIONS OF THIS NOTE**

Initials   Initials   Initials   Initials   Initials   Initials

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 1/01
ITEM 1546L1 (0011)   MFCD3002     (Page 1 of 2 pages)     4001474115   GREATLAND ■
To Order Call: 1-800-630-9393 □ Fax: 616-791-1131

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          Fifteen          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          2.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

MULTISTATE FIXED RATE NOTE—Single Family    Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1846L2 (0011)    MFCD3002                    (Page 2 of 3 pages)

4001474115    Form 3200 1/01    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Frances Ramos_____ (Seal)          _____ (Seal)
FRANCES RAMOS                    -Borrower                               Borrower

Pay to the order of:
First Franklin Financial Corporation          _____ (Seal)          _____ (Seal)
Without Recourse                              -Borrower                               -Borrower
First Franklin Financial Corp.
an Op. Sub. of MLB&T Co., FSB

By:
Tommie Loving
Closer/Funder                                 _____ (Seal)          _____ (Seal)
                                              -Borrower                               -Borrower

Pay to the order of:                                                        [Sign Original Only]

Without Recourse
First Franklin Financial Corporation

By:
Tommie Loving
Closer/Funder

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
ITEM 1848L3 (0011)   MFCD3002                    (Page 3 of 3 pages)          4001474115          GREATLAND ®
                                                                             To Order Call 1-800-530-9393 □ Fax 616-791-1131

# PREPAYMENT NOTE ADDENDUM

This Prepayment Note Addendum is made this ___15th___ day of ___June 2007___ and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

101-22 132ND ST
SOUTH RICHMOND HILL, NY 11419

ADDITIONAL COVENANTS. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Section 4 of the Note, is modified to provide for a prepayment charge upon Borrower's full prepayment. A "full prepayment" is the prepayment of all of the unpaid principal due under the Note. A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Borrower can make a partial prepayment at anytime without paying any charge. Borrower may make a full prepayment at anytime subject to a prepayment charge as follows:

If within the first ___12___ months after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of the Note at the time of the full prepayment.

2. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

## NOTICE TO BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Prepayment Note Addendum.

_Frances Ramos_ _____ (Seal)        _____ (Seal)
FRANCES RAMOS              -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                              -Borrower

Fixed Rate and Balloon Prepayment Note Addendum – First Lien – AZ, CA, CO, CT, DE, FL, HI, ID, IA, LA, MT, ND, NE, NH, NV, NY, OK, OR, PA, SC, SD, TN, TX, UT, WA, WY

FF0033ID   MFCD6024                                                      4001474115

BALLOON NOTE ADDENDUM TO FIXED RATE NOTE– FIRST FRANKLIN FINANCIAL CORP.,
(Not to be Used for Texas Homestead Loans Unless Proceeds Used Only for Purchase Money or Refinance of Purchase Money)

Date: June 15, 2007

1. DEBTOR (S):   FRANCES RAMOS

Property Address: 101-22 132ND ST
SOUTH RICHMOND HILL, NY  11419

2.  DEFINED TERMS; ADDENDUM A PART OF THE NOTE.  "Addendum" means this Balloon Note Addendum to the Fixed Rate Note ("Note") which is attached to, made a part of and amends and supplements the Note dated the same date as this Addendum. The term Lender includes Lender's successors and assigns. In the event there are any conflicts between this Addendum and the Note, the provisions of the Addendum will control. Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note.

3. BALLOON NOTE.  The final payment due on the Maturity Date of the Note is larger than the previous monthly payments.  The final payment includes a substantial payment of principal.  This Note is commonly called a "balloon note."

4. BALLOON NOTE AGREEMENT.  You understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE NOTE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY.  IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

5.  SIGNATURES.  YOU, INTENDING TO BE LEGALLY BOUND, HAVE READ AND AGREE TO ALL PROVISIONS OF THIS ADDENDUM. CAUTION -- DO NOT SIGN THIS ADDENDUM IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN.  IT IS IMPORTANT THAT YOU THOROUGHLY READ IT BEFORE SIGNING. You acknowledge receipt of a completed copy of this Addendum.

| Debtor: | FRANCES RAMOS | _Frances Ramos_ |
|---|---|---|
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X_____ |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X_____ |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X_____ |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X_____ |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X_____ |
| | Type or print name of Debtor | Debtor's signature |

MFC05210
FF030710

4001474115

## ADDENDUM TO PROMISSORY NOTE AND SECURITY AGREEMENT
### (New York Balloon Loan Disclosures)

This Addendum to Promissory Note and Security Agreement ("Addendum") supplements and is incorporated by reference into that certain Promissory Note and Security Agreement ("Contract") of even date between you and us. Terms shall have the meanings described in the Note.

**Please read the following carefully:**

[X]   If this box is checked, we will not guarantee refinancing of the loan for additional terms until the principal balance has been repaid. Accordingly:

THE TERM OF THE LOAN IS __30__ YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING __30__ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any, are made in accordance with the loan contract) will be $ 342,324.13

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

[ ]   If this box is checked, we will guarantee refinancing of the loan for additional terms until the principal balance has been repaid but we do not provide for the recalculation of the interest rate at the time of each refinancing according to a prespecified index. Accordingly:

THE TERM OF THE LOAN IS _____ YEARS. AT MATURITY, _____ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE, AND AT TIME OF EACH FURTHER REFINANCING, THE LOAN WILL BE REFINANCED AT AN INTEREST RATE ESTABLISHED BY THE LENDER WITH REFERENCE TO MARKET RATES. SUCH INTEREST RATE(S) MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any, are made in accordance with the loan contract) will be $

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

Borrowers/Debtors acknowledges receipt with all applicable blanks filled in.

_Frances Ramos_    6/15/07      _____
FRANCES RAMOS      Date                       Date

_____      _____
Date                       Date

_____      _____
Date                       Date

MFNY6074
FF010810

4001474115

# NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007062201579001001E2684

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 20 |
|---|---|

| Document ID: 2007062201579001 | Document Date: 06-15-2007 | Preparation Date: 06-22-2007 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 19

| PRESENTER: | RETURN TO: |
|---|---|
| PREFERRED ABSTRACT ***PICK-UP*** | FIRST FRANKLIN FINANCIAL CORP. |
| 181 WEST MAIN STREET | 595 UNIVERSITY BLVD |
| SUITE 200 | DEPT 2150 |
| BABYLON, NY 11702 | IDAHO FALLS, NY 83401 |
| 631-321-5550 | C/O SECURITY CONNECTIONS |
| 524Q02311 ***VICKI*** | |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 9499 | 14 | Entire Lot | | 101-22 132ND STREET |

Property Type: DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year _____ Reel _____ Page _____ or File Number_____

## PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| FRANCES RAMOS | MERS |
| 101-22 132ND STREET | P.O. BOX 2026 |
| SOUTH RICHMOND, NY 11419 | FLINT, MI 48501-2026 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 392,800.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 392,800.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,964.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 3,928.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 982.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 1,148.40 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed        07-17-2007 15:45 | | |
| TOTAL: | $ | 8,022.40 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 132.00 | | 2007000367600 | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

*City Register Official Signature*

*Total Mortgage Tax 8022.40    524Q02311*

After Recording Return To:

FIRST FRANKLIN FINANCIAL CORP.
c/o SECURITY CONNECTIONS
596 UNIVERSITY BLVD., DEPT. 2150
IDAHO FALLS, ID 83401

──────── [Space Above This Line For Recording Data] ────────

# MORTGAGE

MIN: 100425240014741158

WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated      June 15, 2007      , together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower." FRANCES RAMOS

*Queens County Blk 9499 Lot 14*

whose address is 101-22 132nd St, South Richmond, NY 11419

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D) "Lender." FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB will be called "Lender." Lender is a corporation or association which exists under the laws of Delaware . Lender's address is 2150 NORTH FIRST STREET, SAN JOSE, California 95131

(E) "Note." The note signed by Borrower and dated      June 15, 2007      ; will be called the "Note." The Note shows that I owe Lender Three Hundred Ninety Two Thousand Eight Hundred and no/100 Dollars (U.S. $ 392,800.00      ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by July 01, 2037.

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2746L1 (0011)—MERS MFNY3115      *(Page 1 of 14 pages)*

Form 3033 1/01
40014741156GreatDocs™
To Order Call: 1-800-968-5775

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☒ Balloon Rider    ☐ Planned Unit Development Rider    ☒ Other(s) [specify] Prepay Rider

☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3033 1/01

ITEM 2748L2 (0011)—MERS MFNY3115     (Page 2 of 14 pages)     4001474115 GreatDocs™
To Order Call 1-800-968-5775

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A)  Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B)  Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C)  Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lenders's successors and assigns) has the right:

    (A)  to exercise any or all those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B)  to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest), rights in the Property described in (A) through (G) below:

    (A)  The Property which is located at         101-22 132ND ST
                                               [Street]

        SOUTH RICHMOND HILL    , New York       11419
        [City, Town or Village]                           [Zip Code]

This Property is in QUEENS                       County. It has the following legal description:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

    (B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

    (D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

    (E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

    (F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

    (G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2746L3 (0011)—MERS MFNY3115          (Page 3 of 14 pages)

Form 3033 1/01

4001474115 GreatDocs™
To Order Call: 1-800-968-5775

# PREFERRED ABSTRACT CORPORATION

*Acting as Agents for*
*First American Title Insurance Company of New York*

**Title No. 524Q02311**

### SCHEDULE A

ALL that certain parcel of land situate in the Fourth Ward of the borough and county of Queens, City and State of New York, being known and designated as Lot 324 in Block 8, on a certain map entitled, "Map of Dunton Park, containing 911 lots, the Town of Jamaica, Queens County, Surveyed and Drawn November 1890 by James F. Deehan" and filed in the Queens County Clerk's Office April 12, 1891 as Map 865 being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the westerly side of 132nd Street, formerly Atfield Avenue, distant 200 feet southerly from the southwesterly corner of 132nd Street and 101st Avenue, formerly Jerome Avenue;

RUNNING THENCE westerly and parallel with 101st Avenue, 100 feet;

THENCE southerly parallel with 132nd Street, 25 feet;

THENCE easterly again parallel with 101st Avenue, 100 feet to the westerly side of 132nd Street;

THENCE northerly along the westerly side of 132nd Street, 25 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY

TOGETHER with the right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above described premises, to the center line thereof.

Page: 1

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1.    Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.    Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2746L4 (0011)—MERS MFNY3115

(Page 4 of 14 pages)

Form 3033 1/01

400147411 5GreatDocs™
To Order Call: 1-800-968-6778

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    Monthly Payments for Taxes and Insurance.

(a)    Borrower's Obligations. I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following Items which are called "Escrow Items:"

(1)    The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)    The leasehold payments or ground rents on the Property (if any);

(3)    The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)    The premium for Mortgage Insurance (if any);

(5)    The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)    If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)    Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

NEW YORK—Single Family—Fannie Mac/Freddie Mac UNIFORM INSTRUMENT                                             Form 3033 1/01

ITEM 2746LS (0011)—MERS MFNY3115                                  (Page 5 of 14 pages)                        GreatDocs ™
                                                                                                             To Order Call: 1-800-968-5775

Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c)  **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.  **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.  **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2740L6 (0011)—MERSMFNY3115

(Page 6 of 14 pages)

Form 3033 1/01

4001474115 GreatDocs™
To Order Call: 1-800-968-5775

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.   **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)   **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)   **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.   **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

---

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2746L7 (0011)—MERS MFNY3115

(Page 7 of 14 pages)

Form 3033 1/01

GreatDocs™
To Order Call: 1-800-968-5775

important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 1/01

ITEM 2746L8 (0011)—MERS MFNY3116

(Page 8 of 14 pages)

4001474116 GreatDocs™
To Order Call 1-800-968-8775

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has—if any—regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.   Agreements about Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender, will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                                    Form 3033 1/01

ITEM 2766L9 (0011)—MERS MFNY3115                                  (Page 9 of 14 pages)                          400147411 GreatDocs™
                                                                                                               To Order Call: 1-800-968-5775

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2746L10 (0011)—MERSMFNY3115          *(Page 10 of 14 pages)*

Form 3033 1/01
400147411...
To Order Call: 1-800-968-5775

Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18.  **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19.  **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20.  **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 2740L11 (0011)—MERS2MFNY3115                                    (Page 11 of 14 pages)

Form 3033 1/01
4001474119 GreenDocs™
To Order Call: 1-800-968-0775

by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument, or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21.  **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22.  **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3033 1/03

ITEM 2746L12 (0011)—MERS MFNY3115                              (Page 12 of 14 pages)                    400147411503reatDocs™
                                                                                                       To Order Call: 1-800-968-5775

This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01

ITEM 2746L13 (0011)—MERS MFNY3115                        (Page 13 of 14 pages)

4001474115/InstDocs™
To Order Call: 1-800-968-5775

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

_Frances Ramos_ (Seal)
FRANCES RAMOS -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness: _____

Witness: _____

State of New York )
) SS.:
County of _Nassau_ )

On the _15_ day of _June_ in the year _2007_, before me, the undersigned, a Notary Public in and for said State, personally appeared FRANCES RAMOS

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Nancy Ann Gaubino_ Notary Public
NANCY ANN GAUBINO
NOTARY PUBLIC, State of New York
No. 01GA6087926
Qualified in Suffolk County
Commission Expires Febuary 24, 2007 _2011_ SEAL

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01

ITEM 2746L14 (0011)—NERIS MFNY3115          (Page 14 of 14 pages)          40014741 16 netDocs™
To Order Call: 1-800-968-6778

## ADDENDUM TO PROMISSORY NOTE AND SECURITY AGREEMENT
### (New York Balloon Loan Disclosures)

This Addendum to Promissory Note and Security Agreement ("Addendum") supplements and is incorporated by reference into that certain Promissory Note and Security Agreement ("Contract") of even date between you and us. Terms shall have the meanings described in the Note.

Please read the following carefully:

[X]  If this box is checked, we will not guarantee refinancing of the loan for additional terms until the principal balance has been repaid. Accordingly:

THE TERM OF THE LOAN IS __30__ YEARS. AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING __30__ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any, are made in accordance with the loan contract) will be $ 342,324.13

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

[  ]  If this box is checked, we will guarantee refinancing of the loan for additional terms until the principal balance has been repaid but we do not provide for the recalculation of the interest rate at the time of each refinancing according to a prespecified index. Accordingly:

THE TERM OF THE LOAN IS _____ YEARS. AT MATURITY, _____ YEARS FROM THE DATE ON WHICH THE LOAN IS MADE, AND AT TIME OF EACH FURTHER REFINANCING, THE LOAN WILL BE REFINANCED AT AN INTEREST RATE ESTABLISHED BY THE LENDER WITH REFERENCE TO MARKET RATES. SUCH INTEREST RATE(S) MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.

The principal amount of your loan which will be due at maturity of the loan or the initial term of the loan (assuming all scheduled principal payments, if any, are made in accordance with the loan contract) will be $

At least 90 but not more than 120 days before the maturity date of the balloon payment for your loan, you will receive notice of the maturity date.

Borrowers/Debtors acknowledges receipt with all applicable blanks filled in.


_Frances Ramos_
_____        _____
FRANCES RAMOS              Date              Date


_____        _____
                          Date                               Date


_____        _____
                          Date                               Date


MFNY5075
FF010810                                          4001474116

# PREPAYMENT RIDER

This Prepayment Rider is made this        15th        day of        June 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

101-22 132ND ST
SOUTH RICHMOND HILL, NY 11419

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge.  Borrower may make a
full prepayment at any time subject to a prepayment charge as follows:

If within the first    12    months after the date Borrower executes the Note, Borrower makes a full
prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note),
Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid
in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest
that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect
under the terms of the Note at the time of the full prepayment.

### NOTICE TO BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_Frances Ramos_ (Seal)        _____ (Seal)
FRANCES RAMOS        -Borrower        -Borrower

_____ (Seal)        _____ (Seal)
        -Borrower        -Borrower

_____ (Seal)        _____ (Seal)
        -Borrower        -Borrower

Fixed Rate and Balloon Prepayment Rider - First Lien – AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, LA, MT, ND, NE,
NH, NV, NY, OK, OR, PA, SC, SD, TN, TX, UT, WA, WY

MFCD6026
FF003410

4001474115

**BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED**
**FIRST FRANKLIN FINANCIAL CORP.,**
**(Fixed Rate Loans)**
(Not to be Used for Texas Homestead Loans Unless Proceeds Used Only for Purchase Money or Refinance of Purchase Money)

Date: June 15, 2007

1. BORROWER(S): FRANCES RAMOS

Property Address: 101-22 132ND ST
SOUTH RICHMOND HILL, NY 11419

2. DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT. "Rider" means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to FIRST FRANKLIN FINANCIAL CORP., AN OP SUB. OF MLB&T CO., FSB ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Borrower(s) Note as amended and supplemented by addenda, including the Balloon Note Addendum ("Note") and covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument or the Note, the provisions of the Rider will control.

3. BALLOON NOTE. The final payment due on the Maturity Date of the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. BALLOON NOTE AGREEMENT. Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE NOTE AND SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE MONEY. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

5. SIGNATURES. BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

MFCD6215
FF0366L1

4001474115

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Rider.



FRANCES RAMOS
Type or print name                    Signature

X_____
Type or print name                    Signature

X_____
Type or print name                    Signature

X_____
Type or print name                    Signature

X_____
Type or print name                    Signature

X_____
Type or print name                    Signature

MFCD6215
FF0388L2

4001474116



2008040701058001001EAFF4

### RECORDING AND ENDORSEMENT COVER PAGE PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2008040701058001 | Document Date: 11-01-2007 | Preparation Date: 04-07-2008 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| DOONAN, GRAVES & LONGORIA, LLC<br>100 CUMMINGS CENTER<br>SUITE 225D<br>BEVERLY, MA 01915<br>978-921-2670<br>rl@dgandl.com | HOME LOAN SERVICES, INC.<br>PO BOX 1838 - CONTROL NO. 23-531<br>PITTSBURGH, PA 15230 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9499 | 14 | Entire Lot | 101-22 132ND STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000367600

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MERS AS NOMINEE FOR FIRST FRANKLIN<br>FINANCIAL CORP,<br>AN OP. SUB. OF MLB&T CO., FSB, 1595 SPRING HILL<br>ROAD<br>VIENNA, VA 22182 | FIRST FRANKLIN FINANCIAL CORPORATION<br>2150 NORTH FIRST STREET<br>SAN JOSE, CA 95131 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    04-11-2008 12:22
City Register File No.(CRFN):
2008000146551

*Janette M Hill*

**City Register Official Signature**

Prepared by/Record and Return to:

Home Loan Services, Inc.
150 Allegheny Center Mall
Pittsburgh, PA 15230
Attn: Loan Control 23-531
Loan # 1044895491

Corporate Assignment of Mortgage

County of Queens, State of New York
Date of Assignment: November 1, 2007

Assignor:       Mortgage Electronic Registration Systems, Inc.(MERS) as nominee for
                First Franklin Financial Corp., AN OP. SUB. OF MLB&T CO., FSB
                1595 Spring Hill Road
                Vienna, VA 22182

Assignee:       First Franklin Financial Corporation
                2150 North First Street
                San Jose, CA 95131

Executed by:    FRANCES RAMOS

To:             FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
                2150 N. First St.   San Jose CA 95131
   Mortgage Dated June 17, 2007, and recorded on July 17, 2007, in
OR/Book/Volume/Liber/docket/Reel # n/a  Page/Image: n/a
INSTRUMENT/DOCUMENT/ENTRY/FEE/RECEPTION/MICROFICHE: 2007000367600
Loan Amount: $392,800.00.

PROPERTY : 101-22 132nd STREET, SOUTH RICHMOND HILL, NY 11419
PARCEL I.D. # BLOCK: 9499 LOT: 14

Legal Description: "SEE "EXHIBIT A" ATTACHED HERETO AND MADE A PART HEREOF"

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275
BECAUSE IT IS AN ASSIGNMENT OF THE SECONDARY MARKET.

Know All Men By These Presents that in consideration of the sum of Ten and No/100ths Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee, the said Mortgage   having an original principal sum of $392,800.00 with interest, secured, thereby, Together with all moneys now owing or that may hereafter become due or owing In Respect thereof, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys Unto the said Assignee, the Assignor's beneficial interest under the Mortgage

To Have and To Hold the said      Mortgage   and Note, and also the said property
        Unto the said Assignee forever, subject to the terms contained in said      Mortgage   And
        Note. Signed on this day: November 1, 2007

Witness _____        Mortgage Electronic Registration Systems, Inc.(MERS)
        Robert Altman                   as nominee for First Franklin Financial Corp., AN
                                        OP. SUB. OF MLB&T CO., FSB

Witness _____   By _____
        Timothy Wills                   Eileen J. Gonzales
                                        Assistant Vice President

State of: Pennsylvania
County of: Allegheny

On November 1, 2007, before Eva Gaal, a Notary Public, on this day personally appeared, Eileen J. Gonzales, Assistant Vice President of Mortgage Electronic Registration Systems, Inc.(MERS) as nominee for FIRST FRANKLIN FINANCIAL CORP., an OP. SUB. OF MLB &T CO., FSB, known to me to be the person and officer whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Eva Gaal, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Dec. 2, 2010
Member, Pennsylvania Association of Notaries

**SEAL**

**PREFERRED ABSTRACT CORPORATION**

*Acting as Agents for*
*First American Title Insurance Company of New York*

Title No. 524Q02311

### SCHEDULE A

ALL that certain parcel of land situate in the Fourth Ward of the borough and county of Queens, City and State of New York, being known and designated as Lot 324 in Block 8, on a certain map entitled, "Map of Dunton Park, containing 911 lots, the Town of Jamaica, Queens County, Surveyed and Drawn November 1890 by James F. Deehan" and filed in the Queens County Clerk's Office April 12, 1891 as Map 865 being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the westerly side of 132nd Street, formerly Atfield Avenue, distant 200 feet southerly from the southwesterly corner of 132nd Street and 101st Avenue, formerly Jerome Avenue;

RUNNING THENCE westerly and parallel with 101st Avenue, 100 feet;

THENCE southerly parallel with 132nd Street, 25 feet;

THENCE easterly again parallel with 101st Avenue, 100 feet to the westerly side of 132nd Street;

THENCE northerly along the westerly side of 132nd Street, 25 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY

TOGETHER with the right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above described premises, to the center line thereof.

Page 1



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2008112001396001001E3ADC

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2008112001396001 | Document Date: 11-14-2008 | Preparation Date: 11-20-2008 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| STG ASSOCIATES-P/U-(ANDREW Z-STG) AC55717 | STG ASSOCIATES-P/U-(ANDREW Z-STG) AC55717 |
| A DIVISION OF FIDELITY NATIONAL TITLE | FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN, |
| INSURANCE | ESQS |
| 1610 NORTHERN BLVD SUITE 336 | 3000 MARCUS AVENUE |
| GREAT NECK, NY 11021 | LAKE SUCCESS, NY 11042 |
| 516-488-8811 | 516-488-8811 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 9499 | 14 | Entire Lot | | 101-22 132ND STREET |
| Property Type: DWELLING ONLY - 1 FAMILY | | | | | |

**CROSS REFERENCE DATA**

CRFN: 2007000367600

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| FIRST FRANKLIN FINANCIAL CORPORATION | HIH NO. 1, LLC |
| 150 ALLEGHENY CENTER MALL | 1111 MARCUS AVENUE |
| PITTSBURGH, PA 15212 | LAKE SUCCESS, NY 11042 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      11-25-2008 10:28
City Register File No.(CRFN):
          **2008000454456**

*Annette M Hill*

*City Register Official Signature*

ACSS717

First Franklin Financial Corporation

TO

HIH No. 1, LLC

## ASSIGNMENT OF MORTGAGE

Block:      9499
Lot:        14
County:     Queens

Premises at:    101-22 132nd
                South Richmond Hill, New York

_Record and Return to:_
Friedman, Harfenist, Kraut & Perlstein
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
Attention: Allen Perlstein

1

## ASSIGNMENT OF MORTGAGE

KNOW THAT, **First Franklin Financial Corporation**, with an address at 150 Allegheny Center Mall, Pittsburgh, Pennsylvania 15212   (the "Assignor"), in consideration of Ten Dollars ($10.00) paid by HIH No. 1, LLC, its successors and/or assigns, with an address at 1111 Marcus Avenue, 3rd Floor, Lake Success, New York 11042 (the "Assignee"), hereby assigns unto the Assignee, that certain mortgage dated June 15, 2007 made by **Frances Ramos** in the original principal sum of $592,600.00 to Mortgage Electronics Registration Systems, Inc as nominee for First Franklin Financial Corp., AN OP. SUB. OF MLB&T CO., FSB which was recorded on July 17, 2007 in the Office of the Register of the City of New York, Queens County at CRFN: 2007000367600 as further assigned by Assignment of Mortgage dated November 1, 2007 from Mortgage Electronics Registration Systems, Inc as nominee for First Franklin Financial Corp., AN OP. SUB. OF MLB&T CO., FSB to Assignor and recorded on April 11, 2008 in the Office of the Register of the City of New York, Queens County at CRFN: 2008000146551.(the "Mortgage");

TOGETHER with the bond or note or obligation described in said Mortgage, and the moneys due and to grow due thereon.

TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

SAID ASSIGNMENT is being made by Assignor to Assignee without recourse under any circumstances.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

The word "Assignor" or "Assignee" shall be construed as if it read "Assignors" or "Assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment on November 14th 2008.

IN PRESENCE OF:

First Franklin Financial Corporation

By: _____
Name: Sharon D. Maerkle
Title: VP

2

STATE OF PENNSYLVANIA )
                       ) ss.:
COUNTY OF Allegheny    )

On the 14th day of November in the year 2008, before me, the undersigned, personally appeared Sharon D. Maerkle personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karen Duddy, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Aug. 31, 2011
Member, Pennsylvania Association of Notaries

SEAL

3



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2011012100165001001E563C |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2011012100165001 | Document Date: 12-02-2010 | Preparation Date: 01-21-2011 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| HOLD FOR DENNISE A. TO PICK UP | HOLD FOR DENNISE A. TO PICK UP |
| ADVANTAGE TITLE REC 11866 | ADVANTAGE TITLE REC 11866 |
| 410 NEW YORK AVENUE | 410 NEW YORK AVENUE |
| HUNTINGTON, NY 11743 | HUNTINGTON, NY 11743 |
| 631-424-6100 | 631-424-6100 |
| mschantz@advantagetitle.com | mschantz@advantagetitle.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9499 | 14 | Entire Lot | 101-22 132ND STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000367600

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| HH NO. 1 LLC | FCDB FFI 2008-1 TRUST |
| 1111 MARCUS AVENUE, 3RD FLOOR | C/O FORTRESS INVESTMENT GROUP, 1345 AVENUE |
| NEW YORK, NY 11042 | OF THE AMERICAS |
| | NEW YORK, NY 10105 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed 01-28-2011 12:14
City Register File No.(CRFN):
2011000033827

*Annette M. Hill*

*City Register Official Signature*

HIH NO. 1, LLC

TO

FCDB FF1 2008-1 TRUST

ASSIGNMENT OF MORTGAGE

Block:        9499
Lot:           14
County:     Queens
Premises at:  101-22 132nd Street
               S. Richmond Hill, New York

Record and Return to:
Allen Perlstein, Esq.
Friedman Harfenist Kraut & Perlstein LLP
3000 Marcus Avenue, Suite 2E1
Lake Success, NY 11042

1

MS/D97247/FFORE019

## ASSIGNMENT OF MORTGAGE

KNOW THAT HIH NO. 1 LLC, with an address at 1111 Marcus Avenue, 3rd Floor, Lake Success, New York 11042 (the "Assignor"), in consideration of Ten and 00/100 Dollars ($10.00) paid by FCDB FF1 2008-1 TRUST (the "Assignee"), hereby assigns unto the Assignee a certain mortgage dated June 15, 2007 made by Francis Ramos in the original principal sum of $392,800.00 to Mortgage Electronics Registration Systems, Inc. as nominee for First Franklin Financial Corp., AN OP. SUB OF MLB&T CO., FSB which was recorded on July 17, 2007 in the Office of the City Register of the City of New York, Queens County at CRFN 2007000367600 as assigned by an Assignment of Mortgage dated November 1, 2007 from Mortgage Electronics Registration Systems, Inc. as nominee for First Franklin Financial Corp., AN OP. SUB OF MLB&T CO., FSB to First Franklin Financial Corporation and recorded on April 11, 2008 in the Office of the Register of the City of New York, Queens County at CRFN 2008000146551, as further assigned by an Assignment of Mortgage dated November 14, 2008 from First Franklin Financial Corporation to Assignor and recorded on November 25, 2008 in the Office of the Register of the City of New York, Queens County at CRFN 2008000454456 (the "Mortgage").

TOGETHER with the bond or note or obligation described in said Mortgage, and the moneys due and to grow due thereon.

TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

SAID ASSIGNMENT is being made by Assignor to Assignee without recourse under any circumstances.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

The word "Assignor" or "Assignee" shall be construed as if it read "Assignors" or "Assignees" whenever the sense of this instrument so requires.

## THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK

*c/o Fortress Investment Group
1345 Avenue of the Americas
New York, N.Y. 10105*

2

MS/D97247/FFORE019

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment on December 2nd, 2010.

IN PRESENCE OF:

HIH NO. 1, LLC

By: _____

Name: Keith Kantrowitz
Title: Manager

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NASSAU)

On the 2nd day of December in the year 2010, before me, the undersigned, personally appeared Keith Kantrowitz personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

ALLEN PERLSTEIN
Notary Public, State of New York
No. 02PE5026997
Qualified in Nassau County
Commission Expires May 2, 2014



MS/D97247/FFORE019

Queens County Clerk's Office
Paym 1729564 06/13/2011 11:29a

| | |
|---|---|
| Tr.2076312 | $35.00 |
| Notice of pendency | |
| 14111/2011 FCDB FF1 2008-1 TRUST | |
| Tr.2076310 | $400.00 |
| Mortgage Foreclosure | |
| 14111/2011 FCDB FF1 2008-1 TRUST | |
| Total: | $435.00 |
| Check | $400.00 |
| Check | $35.00 |